UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JEREMY REYNOLDS,

                 Plaintiff,

     -against-

VILLAGE OF CHITTENANGO, *ET AL.*,

                 Defendants.

_____

5:19-CV-416 (GLS/TWD)

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

A.J. Bosman, Esq.
Bosman Law Firm, L.L.C.
*Attorneys for Plaintiff*
201 W. Court Street
Rome, New York 13440
Tel. (315) 336-9130

## TABLE OF CONTENTS

PRELIMINARY STATEMENT     1

ARGUMENT     1

I.    LEGAL STANDARD ON A MOTION TO DISMISS     1

II.    PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE VIABLE AND THE COURT SHOULD DECLINE TO DISMISS THEM.     3

    A.  The Complaint adequately alleges personal involvement of each Defendant.     3

    B.  Plaintiff has alleged facts to state a claim of First Amendment retaliation.     5

       1.  Protected Speech     5

          a.  Plaintiff's speech is not barred by Garcetti v. Ceballos, 547 U.S. 410 (2006).     5

          b.  Plaintiff spoke on a matter of public concern.     6

       3.  Causal Connection     7

    C.  Plaintiff's Complaint alleges sufficient facts to state a Monell claim against the Village of Chittenango.     9

    D.  Plaintiff has stated a viable violation of his Fourteenth Amendment Due Process Rights.     9

       1.  Procedural Due Process     9

       2.  Substantive Due Process     14

III.  PLAINTIFF'S STATE LAW CLAIMS SHOULD BE SUSTAINED.     15

    A.  Defamation     15

    B.  Breach of Contract     16

    C.  Intentional Infliction of Emotional Distress     18

**TABLE OF CONTENTS (CONT'D)**

**D.  Tortious Interference** 18

**E.  *Prima Facie* Tort** 19

**CONCLUSION** 20

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of Plaintiff Jeremy Reynolds in opposition to the motion to dismiss filed by Defendants.  For the reasons that follow, Defendants' motion should be denied.  However, should the court deem the Complaint deficient in some way, Plaintiff requests leave to re-plead and amend his complaint.

## ARGUMENT

## I.    LEGAL STANDARD ON A MOTION TO DISMISS

Contrary to Defendants' position, the Complaint contains more than sufficient factual material to satisfy the Federal Rules.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("[Rule] 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  **Specific facts are not necessary**; the statement need only 'give the defendant fair notice of what the  ...  claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (emphasis added) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957))).

It is well established that there is no heightened pleading standard for civil rights cases. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 508 U.S. 223 (1993); Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

A plaintiff is not required to plead specific examples or evidence in a complaint.  That notion was rejected by the Second Circuit.  See Arista Records LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010) (". . . the notion that Twombly imposed a heightened standard ... is belied by the Twombly opinion itself."); see also Foster v. Penn Millers Ins. Co., No. 09-492, 2010 U.S. Dist. LEXIS 74887, *7 (D. N.J. Jul. 22, 2010) ("[i]t is not necessary to plead evidence, and it is not

necessary to plead all the facts that serve as a basis for the claim.") (citing Bogosian v. Gulf Oil

Corp., 561 F.2d 434, 446 (3rd Cir. 1977)).

The Complaint sets forth facts sufficient to support plausible claims for relief as to each

claim and against each Defendant. Accordingly, the Defendants' motion to dismiss based upon

their contention that the Complaint fails to state a claim should be denied.

Defendants are asking this court to inject an evidentiary standard in what is only a "fair

notice" pleading of the claims supported by plausible facts.  The Seventh Circuit in Tamayo v.

Blogojevich, 526 F.3d 1074 (7th Cir. 2008) noted there is a push to over-read the then new

"standard" of pleading:

> Since Bell Atlantic, we cautiously have attempted neither to over-read nor
> to under-read its holding.  We have stated that the Supreme Court in Bell Atlantic
> "retooled federal pleading standards," and retired "the oft-quoted Conley
> formulation."  Killingsworth, 507 F.3d at 618-19 (quoting Bell Atlantic, 127 S.
> Ct. at 1968 (quoting Conley, 355 U.S. at 45-46)).  We also have cautioned,
> however, that **Bell Atlantic "must not be overread."**  Limestone Dev. Corp. v.
> Vill. of Lemont, Ill., 520 F.3d 797, 2008 WL 852586, at *5 (7th Cir. 2008).
> Although the opinion contains some language that could be read to suggest
> otherwise, the Court in Bell Atlantic made clear that it did not, in fact, supplant
> the basic-notice pleading standard.  Bell Atlantic, 127 S. Ct. at 1973 n. 14 ...  A
> plaintiff still must provide only "enough detail to give the defendant fair notice of
> what the claim is and the grounds upon which it rests, and, through his
> allegations, show that it is plausible, rather than merely speculative, that he is
> entitled to relief." *Lang,* 249 Fed. Appx. 464, 2007 WL 2752360, at *2 (citing
> *Bell Atlantic,* 127 S. Ct. at 1964) (internal quotation marks and ellipses omitted).
>
> Additionally, *Bell Atlantic's* explicit praise of Form 9 of the Federal Rules
> of Civil Procedure illustrates that **conclusory statements are not barred entirely
> from federal pleadings.**

Id. at 1082-1086 (emphasis added). Seeking to preclude Plaintiff from the relief he seeks based

on hyper-technical or elaborate rules of construction was not and should not be contemplated by

the courts.

-2-

## II.   PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE VIABLE AND THE COURT SHOULD DECLINE TO DISMISS THEM.

### A.  The Complaint adequately alleges personal involvement of each Defendant.

The Complaint, at Paragraph 2, identifies each Defendant and their respective positions with the Village of Chittenango:

> The named Defendants herein are the VILLAGE OF CHITTENANGO; WAYNE HORNING, MAYOR & TRUSTEE; COLLEEN BALDWIN, TRUSTEE; ELIZABETH BOUGH-MARTIN, DEPUTY MAYOR & TRUSTEE; MICKEY KOPP, MAYOR & TRUSTEE; MICHAEL KEVILLE, MAYOR; CHITTENANGO POLICE CHIEF FRED COREY JR.; GEORGE MILLET, CORPORAL; CASSANDRA CIMPI; JOHN DOES, in their individual and official capacities.

The law demands only that a defendant be "personally involved" in unconstitutional activity to be held liable.  See Patterson v. County of Oneida, 375 F.3d 206, 228 (2d Cir. 2004) ("Personal involvement, within the meaning of this concept, includes ... direct participation in the alleged violation ...").  Here, there is such "personal involvement" with respect to each of the named Defendants.

The Complaint, at Paragraphs 10 and 11, specifically alleges that Defendant Corey terminated Plaintiff's employment and that "[t]he Village of Chittenango and its agents were negligent in that they knew or should have known that the Police Department, Chief Corey terminated Plaintiff's employment unlawfully and without just cause, and each of the named Defendants herein failed to take steps to intervene, supervise,  or otherwise instruct said individuals to cease and desist unlawful treatment of the Plaintiff.  Defendants knew or should have known their conduct would cause Plaintiff harm."

Additionally, the Complaint, at Paragraph 11, alleges that "Defendants Corey, Horning and Copp subjected Plaintiff to threats of false and malicious criminal prosecution and/or harm

to his reputation if he did not resign and/or forego his civil and legal remedies for the conduct of the Defendants in seeking his termination and unlawfully terminating his employment. Additionally, Defendant Cimpi was aware of the unlawful actions of the other named Defendants and acted in concert or failed to intervene on Plaintiff's behalf."

Based on the allegations in Paragraphs 10 and 11, there is no doubt that the Complaint adequately alleges the "personal involvement" of Defendants Corey, Horning and Copp.  With respect to the remainder of the Defendants, the absence of direct participation in the unconstitutional activity is not dispositive.  Personal involvement can be shown in a number of ways:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Rucano v. Koenigsmann, 9:12-CV-0035, 2014 U.S. Dist. LEXIS 44085, at *25 (N.D.N.Y Mar. 3, 2014) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

Based on the allegations in Paragraphs 10 and 11, Defendants Baldwin, Bough-Martin, Keville, Millet, and Cimpi were personally involved by virtue of their failure to act and thus are liable for the unconstitutional activity.  Plaintiff cannot be expected to know all information implicating all Defendants in the absence of discovery.  Unlike the Defendants who had a pre-suit opportunity to depose the Plaintiff in a 50-h hearing, Plaintiff has had no such ability to

inquire of the Defendants under oath up to this point.

### B.  Plaintiff has alleged facts to state a claim of First Amendment retaliation.

#### 1.  Protected Speech

##### a.  Plaintiff's speech is not barred by Garcetti v. Ceballos, 547 U.S. 410 (2006).

Defendants make the argument that Plaintiff's complaints regarding a potential workplace safety hazard were made pursuant to this job duties.  However, there is no indication that Plaintiff's job duties included the servicing of patrol vehicles or investigating workplace hazards. Plaintiff's internal speech is therefore not unprotected.  See Matthews v. City of New York, 779 F.3d 167 (2d Cir. 2015).  In Mathews, the Second Circuit reversed the dismissal of a police officer's First Amendment Section 1983 claim based on internal speech.  The officer's "speech addressed a precinct-wide policy" involving quotas.  Id.  at 174.  According to the decision, Matthews made complaints to his supervisors, which is similar to the instant action as Plaintiff's internal speech similarly involved complaints to supervisors.  The Matthews court rejected the argument that the officer's complaints were barred under Garcetti, holding, among other things, that voicing complaints about the alleged quota system were not "'part-and-parcel' of his regular job" duties.  Id. at 174.

Critically, the appeals court observed that "[i]f ... [a] general duty to report [workplace hazards] were permitted to control whether the speech of any employee—without regard to whether the investigation and reporting of [workplace hazards] is an integral part of the employee's day-to-day job (i.e. what he or she is "employed to do," Garcetti, 547 U.S. at 421)—enjoyed First Amendment protection, public employers could be encouraged to simply prescribe similarly general duties, thereby limiting such protection for wide swaths of employee

speech." Id. at 175.

In this case, Plaintiff was not "employed to" police and/or report workplace hazards and therefore his complaints/reports are not barred by the Garcetti rule.  The Matthews case is persuasive authority to find the speech here is not barred by Garcetti.

### b.  Plaintiff spoke on a matter of public concern.

Paragraph 8 of the Complaint alleges that Defendants retaliated against Plaintiff for repeatedly complaining about being subjected to noxious and/or toxic fumes during his patrol work because of a defective condition of a police vehicle.  This workplace hazard Plaintiff reported not only affected him but fellow officers as well.  (Compl., ¶ 8).

Defendants argue that Plaintiff's complaints did not involve a matter of public concern. Speech is protected under the First Amendment if "it relates to any matter of social, political, or other concern to the community." See Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003).  The Second Circuit has specifically ruled that safety hazards in the workplace are matters of public concern.  See Munafo v. Metro. Transp. Auth., 285 F.3d 201 (2d Cir. 2002). In Munafo, the court explained:

> The complaint and Munafo's affidavit assert that Munafo was speaking out--both in filing complaints and in dealing with members of his union--on matters of safety. He complained of, inter alia, trackworkers' being forced to operate in unlawful proximity to live rails without protective gear, welders' being forced to work without respirators, and drivers' being assigned vehicles with faulty brakes. **If one needed to consult more than common sense, one would need look no farther than the existence of laws such as the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et. seq. (1994), and similar state laws, see, e.g., N.Y. Lab. Law § 202 et seq. (McKinney Supp. 2001), to recognize that safety in the workplace is a matter of public concern.**

Munafo, at 212 (emphasis added).

Defendants also argue that Plaintiff's complaints were motivated "primarily to [address]

his own situation."  However, as the Second Circuit's decisions in <u>Cioffi v. Averill Park Cent. Sch. Dist.</u>, 444 F.3d 158 (2d Cir. 2006) and <u>Sousa v. Roque</u>, 578 F.3d 164 (2d Cir. 2009) make clear:  personal motivation is not dispositive.

"An employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking on matters only of personal interest. **We make clear today, however, that it does not follow that a person motivated by a personal grievance cannot be speaking on a matter of public concern.**"  <u>Kelly v. Huntington Union Free Sch. Dist.</u>, 675 F. Supp. 2d 283, 293 (E.D.N.Y. 2009) (quoting, <u>Sousa</u>, 578 F.3d at 174 (2d Cir. 2009)) (emphasis added).

### 3.  Causal Connection

Defendants complain that the Complaint does not identify when Plaintiff made his complaints.  However, Plaintiff's employment with Defendants lasted just beyond six (6) months.  Moreover, the Complaint alleges that Plaintiff "repeatedly complain[ed]" and there is nothing in the Complaint to suggest that Plaintiff's complaints stopped prior to his termination.

"Temporal proximity is only one of several methods for demonstrating the requisite causal link between an adverse employment action and a charge of unlawful retaliation."  <u>Lore v. City of Syracuse</u>, 583 F. Supp. 2d 345, 368 (N.D.N.Y. 2008) (internal citation omitted);  <u>Caruso v. City of New York</u>, No. 06 Civ. 5997, 2013 U.S. Dist. LEXIS 138643, *62 (S.D.N.Y. Sept. 26, 2013).  Moreover, "[there] is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between a protected activity and an alleged retaliatory action." <u>Gonzalez v. Carestream Health, Inc.</u>, No. 12-4202-cv, 2013 U.S. App. LEXIS 6541, FN2 (2d Cir. Apr. 2, 2013) (Summary Order) (citing <u>Bucalo v. Shelter Island</u>

Union Free Sch. Dist., 691 F.3d 119, 131 (2d Cir. 2012)).

"A plaintiff may ... establish a causal connection directly through evidence of retaliatory animus against [him] by the defendant." Sharpe v. Utica Mutual Ins. Co., 756 F. Supp. 2d 230, 247 (N.D.N.Y. 2010); see also Baez v. State of New York, No. 110301/09, 2010 N.Y. Misc. LEXIS 5525, *19 (Sup. Ct. NY Cnty. Nov. 9, 2010) ("A causal connection can be established directly, through evidence of retaliatory animus, such as verbal or written remarks."). That the employer engaged in antagonist behavior toward the employer is suggestive of retaliatory motive and may provide the necessary support for a retaliation claim. See Housing Works, Inc. v. City of New York, 72 F. Supp. 2d 402, 426 (S.D.N.Y. 1999) ("Evidence of a 'pattern of antagonism' or of prior retaliatory conduct may serve as circumstantial evidence of retaliation.").

Here, the Complaint alleges that Plaintiff was subjected to "undue scrutiny" (Compl., ¶ 8) and "threats of false and malicious criminal prosecution and/or harm to his reputation if he did not resign and/or forego his civil and legal remedies for the conduct of the Defendants in seeking his termination and unlawfully terminating his employment." (Compl., ¶ 11). Such conduct is clearly indicative of animus against Plaintiff. Inasmuch as the Complaint alleges that "Plaintiff performed his duties satisfactorily," (Compl., ¶ 7) and there is nothing else alleged that supplies an alternative explanation for such animus, retaliation is the motive.

Plaintiff does not need to allege specific facts to substantiate a retaliatory motive at this stage. See Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (internal citation omitted). Indeed, Boykin confronted head-on and rejected the very argument raised here by Defendants concerning the sufficiency of Plaintiff's Complaint: "conclusory allegations" of discriminatory or retaliatory intent suffice at the motion to dismiss stage. See Boykin, at 214-15.

**C.  Plaintiff's Complaint alleges sufficient facts to state a Monell claim against the Village of Chittenango.**

Even a single act may impute liability to a municipality under <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978) when committed by an official with final policy making authority in that area of the municipality's business.  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 482-83 (1986);  <u>Amnesty Am. v. Town of West Hartford</u>, 361 F.3d 113, 126 (2d Cir. 2004).  Here, based on the status of the decision-maker in this case, i.e., Chief of Police, the termination of Plaintiff's employment can properly be imputed to the Village of Chittenango.  See  <u>Brown v. City of Syracuse</u>, No.  5:01-CV-1523, 2008 U.S. Dist. LEXIS 105280, at \*\*17-18 (Chief of Police's discretionary authority in handing out discipline supported <u>Monell</u> liability) (citing <u>Rookard v. Health & Hosps. Corp.</u>, 710 F.2d 41, 45 (2d Cir. 1983) (finding <u>Monell</u> liability where individual actors had authority to order employee's discharge and their authority over personnel decisions was final));  <u>T.Z. v. The City of New York</u>, 635 F. Supp. 2d 152, 178, at ft. n. 27 (E.D.N.Y. 2009) ("A school principal has final policymaking authority in the management of the school and her conduct represents official district police within the purview of the school."); <u>Rekowicz v. Congemi</u>, No. 11-1561, 2012 U.S. Dist. LEXIS 133287, \*17 (E.D.N.Y. Jul. 2, 2012) (noting that a school principal could be a "policy-maker" for <u>Monell</u> purposes).

**D.  Plaintiff has stated a viable violation of his Fourteenth Amendment Due Process Rights.**

**1.  Procedural Due Process**

Plaintiff was entitled to but denied both a pre- and post termination hearing. He was deprived of both. Plaintiff received no pre-termination process and in fact was threatened with

criminal charges but never charged with misconduct. An employee who possesses a property interest in continued employment, as in Plaintiff's case, must be afforded a pre-termination opportunity to respond to charges of misconduct coupled with a post-termination hearing.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547-48 (1985).  This post-termination hearing must be "a full adversarial hearing before a neutral adjudicator."  Locurto v. Safir, 264 F.3d 154, 173 (2d Cir. 2001) ("… due process is satisfied so long as the government provides a neutral adjudicator at the post-termination hearing for a tenured public employee, …").

In the Complaint, at Paragraph 9, Plaintiff alleges that he "was unlawfully terminated from his employment on February 9th, 2018 without cause or a hearing in spite of his entitlement to such process under law and contract."  Plaintiff alleges that he completed his probationary period prior to his termination and that he was "entitled to all benefits and privileges and protections provided by the Constitution of the United States, the employment contract and collective bargaining agreement, General Orders, Madison County Civil Service Law and Rules, and New York State laws, and the Civil Service Law of the State of New York."  (Compl., ¶ 7). In their motion, Defendants do not supply any of these documents.  As the movants, it is their burden to show the absence of merit to Plaintiff's allegations.  Defendants could have attached any document referenced in the Complaint.  See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.").  They did not do so and, as such, Plaintiff's allegations in the Complaint

must be credited.

Defendants' reliance on remedies purportedly available under a collective bargaining agreement is both not supported and misplaced.  The Second Circuit has held that procedures in a collective bargaining agreement do not automatically satisfy federal due process standards as Defendants here seem to believe.  See Ciambriello v. County of Nassau, 292 F.3d 307 (2d Cir. 2002) (court held that CBA procedures were insufficient to protect an employee's property interest).  In Ciambriello, the Second Circuit stated that "[t]he fact that collective bargaining agreements might, in some circumstances, provide all the process that the union members are due obviously does not compel the conclusion that the CBA at issue here provided all the process that [the employee] was due [under the Constitution]."  Id. at 322, ft. n. 7.  Again, Defendants have failed to supply such CBA with their motion and without such document the court cannot say that Plaintiff's allegations are implausible.

Defendants also rely on remedies purportedly available under N.Y. CPLR Article 78 (Article 78).  The only thing Article 78 could have done was force Defendants provide a hearing; it could not serve as a substitute for one.  The relief available in an Article 78 proceeding is narrow and such proceeding alone does not afford adequate process to challenge the dismissal of an employee who enjoys permanent status.

In their motion, Defendants do not identify which form of relief was purportedly available to Plaintiff under Article 78[1].  However, an Article 78 proceeding challenging the termination of a constitutionally protected property interest in employment will necessarily fall within the relief

---

[1]An Article 78 proceeding may provide relief previously available through the common law writs of (1) certiorari, (2) mandamus to compel, (3) mandamus to review, and (4) prohibition.  See CPLR § 7801; Matter of Abdur-Rahim v. Dept. of Housing Preservation and Development, 2010 N.Y. Misc. LEXIS 1366, at *6, 2010 N.Y. Slip. Op. 30264(U) (N.Y. Sup. Ct., New York Cnty. 2010).

previously sought by the writs of certiorari or mandamus to compel.  If the challenge is made after a quasi-judicial evidentiary hearing, then it is in the character of certiorari review;  if the challenged agency action did not involve a hearing at the agency level, then the Article 78 proceeding is in the form of mandamus to compel.  See Matter of De Milio v. Borghard, 55 N.Y.2d 216, 220 (1982) ("If the employee [] is entitled to but is deprived of a hearing, his remedy is by way of mandamus to compel.") (internal citation omitted);  Heck v. Keane, 6 A.D.3d 95, 98-99 (4th Dept. 2004) (Article 78 relief limited to mandamus to compel where government benefits previously awarded are terminated without a hearing) (internal citations omitted).

An Article 78 mandamus to compel proceeding is not a hearing within which an employee could challenge the termination of his employment.  The Article 78 court would merely order the municipality provide a hearing before an "impartial arbiter."  Id. at 95 & 98 ("Petitioner was therefore entitled to a hearing and, accordingly, this proceeding is in the nature of mandamus 'to compel the performance of a ministerial act [imposed] by law.'") (internal quotation omitted).

This matters nothing to this case, however, since the availability of an Article 78 mandamus to compel proceeding does not defeat Plaintiff's federal due process claims as it is well settled that "'Plaintiffs suing under 42 U.S.C. § 1983 generally need not exhaust their [State or] administrative remedies.'"  Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006) (quoting Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982)).

If Defendants meant to argue that an Article 78 mandamus to review proceeding constitutes sufficient process, here too they are mistaken.  A mandamus to review proceeding

alone is not a constitutionally adequate remedy.

The standard of review for mandamus to review is not *de novo*. Instead, "[t]he standard of review in such a proceeding is whether the agency determination [is] arbitrary and capricious or affected by an error of law." Matter of Scherbyn v. Wayne-Finger Lakes Bd. of Cooperative Educ. Servs., 77 N.Y.2d 753, 758 (1991) (citing, among other authority, CPLR § 7803[3]). "The standard is … an extremely deferential one[] …" (Matter of Beck-Nichols v. Bianco & Co., Nos. 20, 21 and No. 27, 2013 N.Y. LEXIS 134, 2013 N.Y. Slip. Op. 1015 (Feb. 19, 2013)) and "… a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion." Arrocha v. Bd. of Educ. of the Cty. of New York, 93 N.Y. 361, 363 (1999) (internal citations omitted). "'The courts cannot interfere unless there is no rational basis for the exercise of discretion by the administrative agency.'" Id. at 363 (quoting Matter of Pell v. Bd. of Educ. of Union Free Sch. Dist. #1, 34 N.Y.2d 222, 231 (1974) (further internal citation omitted)).

The New York Court of Appeals has noted, "[t]his deferential standard of review accorded administrative determinations … **presupposes** administrative procedures that conform with due process requirements." David W., 95 N.Y.2d at 139 (internal citations omitted) (emphasis added). Thus, in gauging the parameters of Article 78, the New York Court of Appeals has emphasized the distinction between "hearings that are constitutionally required" and "hearings that are not required as a matter of due process." NYC Health and Hosps. Corp. v. McBarnette, 84 N.Y.2d 194, 203 ft. n. 2 (1994). The arbitrary and capricious standard utilized for mandamus to review petitions is only appropriate (as the first level of review) where a hearing is **not** constitutionally required. Id. Where there is a constitutional requirement, as here,

-13-

there has to be an evidentiary hearing outside Article 78 which then may be reviewed pursuant to Article 78 utilizing the certiorari type review.  Id.  Accordingly, Defendants' reliance on Article 78 is misplaced and their motion to dismiss based thereon should be denied.

### 2.  Substantive Due Process

Due process is also implicated where an employee's good name and reputation are at stake.  See McGhee v. Draper, 564 F.2d 902, 910 (10th Cir. 1977) ("[W]e agree that … due process required that the accusers of plaintiff, who were attacking her morality and fitness as a teacher, be heard only where plaintiff could confront and cross-examine them.").  "'[W]hen an individual is defamed or stigmatized in the course of his dismissal from public employment, he does have a cognizable liberty interest.'" Guerra v. Jones, 2010 U.S. Dist. LEXIS 25168, at **25-26 (N.D.N.Y. Mar. 17, 2010) (McCurn, S.J.) (quoting Hennigan v. Driscoll, 2009 U.S. Dist. LEXIS 90881 at *6 (N.D.N.Y. 2009)); see also Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623 (2d Cir. 1996).

"There is **no** requirement that in order to succeed on a stigma-plus claim a plaintiff must produce 'an explicit public statement by a municipal official accusing the discharged employee of 'immoral or illegal' conduct." Patterson v. Utica, 370 F.3d 322, 334 (2d Cir. 2004) (emphasis added) (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 447 (2d Cir. 1980)).  Indeed, "the placement of statements in an employee's personnel file may satisfy the contemporaneous public disclosure elements of a stigma-plus claim." Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006) (citing  Brandt v. Bd. of Coop. Educ. Servs., 820 F.2d 41, 45 (2d Cir. 1987)).

Here, Plaintiff's employment was indisputably terminated.  Moreover, the Complaint

alleges that Plaintiff's good name and reputation were sullied.  (Compl., ¶ 21).  In point of fact, the Complaint alleges that Defendants falsely represented that Plaintiff failed to perform his work duties in a satisfactory manner.  (Compl., ¶ 29).  Based on such allegations, Plaintiff has viably stated a stigma-plus claim.

**III.  PLAINTIFF'S STATE LAW CLAIMS SHOULD BE SUSTAINED.**

### A.  Defamation

The Federal Rules, not the strict CPLR requirements, govern the sufficiency of Plaintiff's defamation claim.  See Tannerite Sports, LLC v. NBC Universal News Corp., 864 F.3d 236, 246 (2d Cir. 2016) (applying Fed. R. Civ. P. 8 in assessing sufficiency of a defamation claim under New York law).

Under New York law, the elements to a claim of slander are:

> (1) a false statement;
> (2) published to a third party without privilege or authorization;
> (3) with fault amounting to at least negligence;
> (4) that caused special harm or defamation per se.

Dillon v. City of New York, 261 A.D.2d 34, 38 (N.Y. App. Div. 1st Dept. 1999).

In the instant case, Plaintiff has plausibly alleged each of the foregoing four (4) elements to a defamation claim.  According to the Complaint, Defendants falsely reported that Plaintiff's work performance was unsatisfactory. (Compl., ¶ 29).  This is sufficient.  The New York Court of Appeals in Carney Memorial Hosp. and Nursing Home of Greene County, 64 N.Y.2d 770, 772 (1985) reversed the dismissal of a defamation claim based upon "the publication of a statement that plaintiff was discharged 'for cause.'"  Further, the Complaint pleads more than sufficient facts demonstrating that Defendants were acting out of malice in making such false accusation.

Finally, Plaintiff was injured *per se*[2] and suffered special damages.  See id.

Defendants' further assertion that CPLR § 215's one year statute of limitations applies to Plaintiff's defamation claim conflicts with applicable authority.  See Wright v. City of Newburgh, 259 A.D.2d 485 (App. Div., Second Dept. 1999).  As the Second Department in Bosone v. County of Suffolk, 274 A.D.2d 532 (2000) stated:

> The Supreme Court determined that the plaintiff's intentional tort causes of action were time-barred under CPLR 215.  **Causes of action to recover damages for intentional torts committed by municipal defendants, however, must be commenced within the one-year and 90-day period contained in General Municipal Law § 50-i, " 'which takes precedence over the one-year period of limitations provided for in CPLR 215' "** (Wright v City of Newburgh, 259 AD2d 485, 486, quoting Estate of Adkins v County of Nassau, 141 AD2d 603).  Since the intentional tort causes of action were commenced within one year and 90 days  of the date of their accrual, the Supreme Court erred in granting those branches of the defendants' cross motion which were to dismiss those causes of action, and in denying the  plaintiff's motion to strike the affirmative defense of the Statute of Limitations.

Id. at 533 (emphasis added).

### B.  Breach of Contract

As stated, Defendants have not produced the CBA nor any other document referenced in the Complaint to support their arguments.  This failure is fatal to their motion.  See Vassenelli v. City of Syr., 138 A.D.3d 1471, 1475 (N.Y. App. Div. 4th Dept. 2016) (reversing grant of motion to dismiss, explaining: "Because the city defendants failed to provide a copy of the relevant collective bargaining agreement (CBA), they failed to refute plaintiff's allegations that he has a vested right to health benefits pursuant to section 207-c and that the city defendants violated the CBA by reducing his health benefits." Id. (internal citations omitted).  In their motion,

---

[2] "A statement which concerns a person in his trade or business and tends to injure him therein is actionable per se." Rossi v. Attanasio, 48 A.D.3d 1025, 1027 (N.Y. App. Div. 3rd Dept. 2008)

Defendants acknowledge that "Plaintiff would be subject to a Collective Bargaining Agreement" (Defs.' Memo. of Law, p. 19), yet failed to supply same with their motion.

Defendants assert that the Complaint is ambiguous with respect to the breach of contract claim. The Complaint provides fair notice of Plaintiff's allegations and sufficiently alleges breaches of contract:

> 24. Plaintiff was a civil service employee and as such was protected by the contract in effect entered into by the Village of Chittenango with its police officers. Such contract requires good faith and fair dealing, bars the imposition of discipline without "just case" and compels the employer to provide due process in the form of, inter alia, notice and a hearing.
> 25. Plaintiff was unlawfully terminated from his employment on February 9th, 2018 without cause or a hearing in spite of his entitlement to such process.
> 26. Additionally, Defendant Corey and therefore Defendant Village of Chittenango made a promise to Plaintiff that his probationary period would be a period of 90 days. Defendants breached that agreement by treating and/or declaring Plaintiff to be probationary even after he served 90 days of service, and terminated his employment without cause or due process.

(Compl., ¶¶ 24-26).

Defendants alternatively make the further argument that Plaintiff cannot enforce the CBA. They make the assertion that Plaintiff cannot show a breach by the Union of its duty of fair representation. This assertion will prove to be erroneous. Defendant Cimpi, a Union representative, is specifically alleged in the Complaint to have failed to act when she had a duty to intervene "on Plaintiff's behalf." (Compl., ¶ 11). In fact, the Complaint alleges that she "acted in concert" with the other Defendants. (Id.). A plaintiff is empowered to enforce the terms of a collective bargaining agreement when their union has failed to represent their interests. See Board of Ed., Commack Union School Dist. v. Ambach, 70 N.Y.2d 501 (1987). Accordingly, at this stage of the proceedings, Plaintiff's breach of contract claim should not be dismissed.

### C.  Intentional Infliction of Emotional Distress

Contrary to Defendant's position, the New York State courts have sustained claims for Intentional Infliction of Emotional Distress (IIED) in the employment context.

The Appellate Division, First Department has upheld a victim's right to recover damages for harassment or outrageous behavior in the workplace under the tort of intentional infliction of emotional distress.  See Shannon v. MTA Metro-North R.R., 269 A.D.2d 218, 704 N.Y.S.2d 208 (N.Y. App. Div., 1st Dept. 2000) (holding that harassment, intimidation, and humiliation contributed to psychological and emotional distress of employee); see also Vasarhelyi v. New School for Social Research, 230 A.D.2d 658, 646 N.Y.S.2d 795 (N.Y. App. Div., 1st Dept. 1996) (noting same).

The allegations set forth in the complaint allege a viable claim for IIED.  Defendants gloss over the primary basis for such claim, that is, "[Defendants'] actions ... in threatening Plaintiff using threats of criminal prosecution to coerce Plaintiff."  (Compl., ¶ 33).  Such conduct is extreme and caused Plaintiff severe emotional distress.

### D.  Tortious Interference

To clarify, Plaintiff's claim is one for tortious interference with contractual relations and he does **not** seek to recover against Defendant Village of Chittenango on this cause of action. However, the individual Defendants, specifically, Defendants Corey, Horning and Copp may be held liable for tortious interference with Plaintiff's contractual rights.  In the Complaint, Plaintiff alleges that "Defendants Corey, Horning and Copp subjected Plaintiff to threats of false and malicious criminal prosecution and/or harm to his reputation if he did not resign and/or forego his civil and legal remedies for the conduct of the Defendants in seeking his termination and

unlawfully terminating his employment." (Compl., ¶ 11).

New York State law insures the imposition of liability against those who tortiously interfere with another's employment. See Mansour v. Abrams, 144 A.D.2d 905 (4th Dept. 1988); Pagliaccio v. Holborn Corp., 289 A.D.2d 85 (1st Dept. 2001).

For example, in Mansour, the Fourth Department reversed a grant of a motion to dismiss in a case filed by a dismissed assistant attorney general against two of his superiors alleging tortious interference with contractual relations and defamation. The court permitted such a claim to proceed on a theory of interference with contractual relations even though the Mansour plaintiff was an at-will employee, unlike here.  In noting that a tortious interference claim is not limited to unfair dealings between competitors, the court in Mansour said that a tortious interference claim may properly lie for untrue performance evaluations resulting in injury to an employee. Id.

Here, Plaintiff has alleged tortious conduct on the part of Defendants Corey, Horning and Copp  constituting wrongful means, such as fraud, misrepresentation and coercion (Complaint ¶¶ 9, 11, 26, 29).  Such tortious conduct interfered with Plaintiff's employment with the Village of Chittenango. A viable tortious interference claim is properly advanced in the Complaint.

### E.  *Prima Facie* Tort

Contrary to Defendants' argument, the New York Court of Appeals has said "the existence of a traditional tort [does not] foreclose alternative pleading of *prima facie* tort ... " Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 333 (1983).  As such, the court should reject the argument that merely because Plaintiff has alternative causes of action, his *prima facie* tort claim fails.  Moreover, the Complaint alleges loss of wages and benefits

(Compl., ¶ 42), which constitute special damages.  The *prima facie* tort claim is not a defamation

claim "in disguise" but rather a separate cause of action upon which this Plaintiff may recover.

## CONCLUSION

In conclusion, Plaintiff respectfully requests that the court deny the Defendants' motion

in its entirety.  However, should the court deem any part of Plaintiff's Complaint legally deficient

for lack of factual specificity, Plaintiff hereby requests leave to re-plead and amend accordingly.


Dated:  at Rome, New York
      May 20, 2019                             Respectfully submitted,

                                         s/A.J. Bosman

                                         A.J. Bosman, Esq.
                                         Bosman Law Firm, LLC
                                         *Attorneys for Plaintiff*
                                         201 W. Court Street
                                         Rome, New York 13440
                                         Tel.: (315) 336-9130