**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JEREMY REYNOLDS,

                          **Plaintiff,**

          v.

VILLAGE OF
CHITTENANGO et al.,

                   **Defendants.**

                               5:19-cv-416
                               (GLS/TWD)

_____

APPEARANCES:            OF COUNSEL:

**FOR THE PLAINTIFF:**
Bosman Law Firm, LLC        AJ BOSMAN, ESQ.
3000 McConnellsville Road
Blossvale, NY 13308

**FOR THE DEFENDANTS:**
Goldberg, Segalla Law Firm    SHANNON T. O'CONNOR, ESQ.
5786 Widewaters Parkway     JOHN P. COGHLAN, ESQ.
Syracuse, NY 13214

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Jeremy Reynolds brings this action alleging various claims

pursuant to 42 U.S.C. § 1983 and state law against defendants Village of

Chittenango; Wayne Horning, Mayor and Trustee; Colleen Baldwin,

Trustee; Elizabeth Bough-Martin, Deputy Mayor and Trustee; Mickey Kopp, Mayor and Trustee; Michael Keville, Mayor; Fred Corey, Jr., Chief of the Village of Chittenango Police Department; George Millet, Corporal; Cassandra Cimpi, and John Does.[1]  (Compl., Dkt. No. 2.)  Now pending is defendants' motion to dismiss.  (Dkt. No. 4.)  For the reasons stated below, defendants' motion is granted in part and denied in part.

## II. Background

### A. Facts[2]

Reynolds was employed as a full-time police officer for the Village of Chittenango Police Department from July 24, 2017 until February 9, 2018. (Compl. ¶¶ 6, 9.)  Throughout his career as a Chittenango police officer Reynolds "performed his duties satisfactorily."  (*Id.* ¶ 7.)  The police vehicle assigned to Reynolds "was defective and subjected [him] to noxious and/or toxic fumes during his patrol work."  (*Id.* ¶ 8.)  Although Reynolds alerted defendants as to the vehicle's defective condition, defendants "failed

---

[1]   Defendants' notice of removal refers to certain defendants as "Melinda Kopp," "Cassandra Dailey-Cimpi," and "John & Jane Does."  (Dkt. No. 1.)  However, the state court complaint, which controls, names these defendants as "Mickey Kopp," "Cassandra Cimpi," and "John Does."  (Compl.)  The clerk is directed to amend the docket to reflect the appropriate names.

[2] The facts are drawn from Reynolds' complaint, (Dkt. No. 2), and presented in the light most favorable to him.

repeatedly to remedy or correct" the issues and required him to keep using the vehicle.  (*Id.*)

Defendants also subjected Reynolds to "undue scrutiny," threatened him, and "terminat[ed] his employment" as a result of his complaints.  (*Id.*) Specifically, Corey, Horning, and Kopp "threatened and attempted to coerce [him] into waiving his legal rights . . . by stating . . . that he would be subject to further harm to his good name and reputation and falsely charged with misdeeds and/or criminal conduct if he did not resign his position or refrain from [seeking] legal remedy."  (*Id.* ¶¶ 9, 11.)  All defendants were aware of this conduct, but did not intervene on Reynolds' behalf.  (*Id.* ¶¶ 10-12.)

Reynolds was terminated from his employment on February 9, 2018 "without cause or a hearing [despite] his entitlement to such process under law and contract."  (*Id.* ¶ 9.)  As a result of the aforementioned circumstances, Reynolds suffered "financial loss, emotional distress, [and] harm to reputation," and was "depriv[ed] of [his] rights under local and New York [s]tate [l]aw."  (*Id.* ¶13.)

**B.    Procedural History**

Reynolds commenced this action in New York State Supreme Court, Madison County, alleging various claims under 42 U.S.C. § 1983 and New York state law.  (Compl.)  Specifically, Reynolds alleges (1) a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against all defendants, including a *Monell* claim against the Village of Chittenango; (2) a Fourteenth Amendment due process claim pursuant to 42 U.S.C. § 1983 against all defendants; (3) a breach of contract claim pursuant to New York state law against the Village of Chittenango and Corey; (4) a defamation claim pursuant to New York state law against the Village of Chittenango and Corey; (5) an intentional infliction of emotional distress (IIED) claim pursuant to New York state law against Corey, Horning, and Kopp; (6) a tortious interference of contract claim against Corey, Horning, and Kopp[3]; and (7) a prima facie tort claim against all defendants.  (Compl.)

Defendants removed the lawsuit to this court on the basis of federal question and supplemental jurisdiction, (Dkt. No. 1), and then moved to dismiss the complaint in its entirety, (Dkt. No. 4).

---

[3] Reynolds clarified in his response to defendants' motion to dismiss that his tortious interference claim is one of tortious interference of contract and is asserted only against Corey, Horning, and Kopp.  (Dkt. No. 10 at 18.)

### III.  **Standard of Review**

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  **Discussion**

**A.**    **Reynolds' Federal Claims**

*1.    Federal Claims, Generally*

Reynolds' brings two federal claims against defendants: (1) a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 and (2) a Fourteenth Amendment due process claim.  (Compl.)  Defendants argue that these claims must be dismissed as to certain defendants, because there are no allegations of their personal involvement in the alleged constitutional violations.  (Dkt. No. 4, Attach. 1 at 4-5.)  It is well settled that personal involvement of defendants in the alleged constitutional deprivation is a prerequisite to a finding of liability under § 1983.  *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

The court agrees with defendants that Reynolds has not sufficiently

alleged personal involvement by Baldwin, Bough-Martin, Millet, or Keville in any of the asserted constitutional violations. In fact, the complaint is entirely devoid of any specific allegations as to these defendants. (Compl.) Additionally, Reynolds has not alleged personal involvement by any Doe defendants, against whom the allegations are entirely conclusory. (Compl. ¶ 12.) In sum, Reynolds' claims against these defendants appears to be based solely on their respective positions in the Village of Chittenango, which is not a sufficient basis for liability. *See Dublino v. McCarthy*, No. 9:19-cv-0381, 2019 WL 2053829, at *12 (N.D.N.Y. May 9, 2019).

In addition, contrary to Reynolds' apparent assertion, there is nothing in the complaint to establish that Baldwin, Bough-Martin, Keville, Millet, or any Doe defendants were Reynolds' supervisors. (Dkt. No. 10 at 4 (noting the factors of supervisory liability).) Thus, supervisory liability cannot apply to these defendants. And Reynolds is not entitled to discovery in order to properly plead facts sufficient to maintain his claim against them. *See Perez v. Johnson*, No. 07 Civ. 3761, 2008 WL 2876546, at *3 (S.D.N.Y. July 23, 2008) ("[D]iscovery is not for the purpose of finding a cause of action.").

Accordingly, Reynolds' retaliation and due process claims are

dismissed as against Baldwin, Bough-Martin, Millet, Keville, and Doe defendants for failure to state a claim upon which relief may be granted.[4]

2.    *First Amendment Retaliation Claim*

Reynolds brings a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against all defendants based on his allegations that Reynolds was retaliated against for complaining to his supervisors about his defective patrol vehicle.  (Compl. ¶¶ 15-18.)

"To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech."  *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011) (citations omitted).  For purposes of this motion to dismiss, defendants concede that they took an adverse action against Reynolds.  (Dkt. No. 4, Attach. 1 at 8.)  Accordingly, the only issues are whether (1) Reynolds' speech was protected by the First Amendment and

---

[4] Defendants also argue that the federal claims should be dismissed as against Cimpi for lack of personal involvement.  (Dkt. No. 4, Attach. 1 at 4-5; No. 11 at 2-3.)  However, in an abundance of caution, the court does not dismiss the claims as against her, despite the fact that the only allegations specific to her may fairly be considered conclusory.

(2) there was a causal connection between the adverse action and the protected speech.

Determining whether an employee's speech is protected by the First Amendment requires two inquiries: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke as a citizen rather than solely as an employee." *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011) (internal quotation marks and citation omitted). Defendants argue that the subject of Reynolds' speech was not a matter of public concern and that Reynolds was speaking solely as an employee; not as a citizen. (Dkt. No. 4, Attach. 1 at 6-8.) The court disagrees.

Reynolds' alleged speech involves complaints regarding hazardous workplace conditions, which have been considered by courts in this Circuit to be speech by a private citizen about a matter of public concern. *Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015) ("[W]hen a public employee whose duties do not involve formulating, implementing, or providing feedback on a policy . . . engages in speech concerning that policy, and does so in a manner in which ordinary citizens would be expected to engage, he or she speaks as a citizen, not as a public

employee."); *Manon v. Pons*, 131 F. Supp. 3d 219, 230-31 (S.D.N.Y. 2015) (finding that an employee's complaints about fire exits and the air quality of the workplace consisted of matters of public concern for First Amendment purposes)*; Shanks v. Vill. of Catskill Bd. of Trustees*, 653 F. Supp. 2d 158, 165 (N.D.N.Y. 2009) (finding that reporting fire department safety violations was a matter of public concern); *see also Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002) ("If one needed to consult more than common sense, one would need look no farther than the existence of laws such as the Occupational Safety and Health Act . . . and similar state laws . . . to recognize that safety in the workplace is a matter of public concern.").

The other element in dispute here is whether a causal relationship between the protected speech and the adverse employment action exists. "The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999), *abrogated on other grounds by Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012) (citation omitted).

"Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Id.* (citation omitted).

The court is satisfied at this stage of the litigation that Reynolds' allegations that, after he complained about his defective patrol car, he was subject to "undue scrutiny" and "threats of false and malicious criminal prosecution," despite performing his duties satisfactorily, (Compl. ¶¶ 7-8, 11), are sufficient to establish a causal connection between the protected speech and his termination. *See Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017) (reinstating retaliation claim in part because there was evidence of "retaliatory animus" where plaintiff alleged that officers confronted him directly about his practice of filing grievances before they issued an allegedly false misbehavior report against him); *Jackson v. City of New York*, No. 14 Civ. 5755, 2015 WL 5698535, at *5 (S.D.N.Y. Sept. 28, 2015) (finding a causal connection between the plaintiff's speech and the adverse employment action based on allegations that the defendants threatened and harassed the plaintiff, and falsely represented the plaintiff's performance reviews).

Next, Reynolds attempts to impute *Monell* liability on the Village of Chittenango for his First Amendment retaliation claim pursuant to 42 U.S.C. § 1983, because its employees' "actions and omissions . . . constitute[d] municipal policy" and they "created, maintained[,] and/or fostered a custom, policy or practice of retaliation." (Compl. ¶¶ 17.)

A municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish a municipal policy or custom, a plaintiff must allege:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come in contact.

*Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 452-53 (S.D.N.Y. 2012) (citation omitted).

In arguing that the Village of Chittenango is liable under *Monell*, Reynolds asserts that (1) the Village "failed to adequately train officers and supervisors" and (2) as Chief of Police, Corey had "final policymaking authority" as to the Chittenango's Police Department's hiring decisions. (Compl. ¶ 17; Dkt. No. 10 at 9.)

To show that a municipality, through its failure to train or supervise employees, has violated § 1983, three requirements must be met. *See Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). First, the municipality's policymaker must know "to a moral certainty that [his or] her employees will confront a given situation." *Id.* at 297 (internal quotation marks and citation omitted). Second, either the situation must present the employee with the sort of difficult decision that training or supervision would ameliorate or there is "a history of employees mishandling the situation." *Id.* Finally, it must be shown that the "wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 298 (citation omitted).

Reynolds' *Monell* claim cannot be established based on a "failure to train" theory, because the complaint is entirely devoid of any allegations to support any of these elements. *See Dwares v. City of New York*, 985 F.2d

94, 100 (2d Cir. 1993) ("[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury."); *Carnegie v. Miller*, 811 F. Supp. 907, 911 (S.D.N.Y. 1993) (noting that evidence of an unconstitutional action by a police officer will not, on its own, be enough to prove that the training program the officer received was inadequate, let alone prove that any inadequacy was a result of a city's deliberate indifference).

Next, Reynolds contends that Corey had "final policymaking authority." (Dkt. No. 10 at 9.) Ordinarily, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) (citation omitted). But "municipal liability may be imposed for a single decision by municipal policymakers." *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011) (citation omitted).

The court is satisfied at this juncture that Corey's position as Chief of Police renders him a municipal policymaker sufficient to allege *Monell* liability against the Village of Chittenango. *See* N.Y. Unconsolidated Laws § 5711-q(21) ("The chief of police of [a] village shall be the executive

officer of the police force. . . . He shall assign to duty the officers and members of the police force, and shall have the power to change such assignments."); *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 560 (S.D.N.Y. 2006) (finding that the chief of the defendant Village's police department had final policymaking authority as "the executive officer of the police force" who was "vested with decision making authority regarding officer assignments").

Accordingly, although the complaint is sparse and short on cogent facts, Reynolds' complaint has alleged a sufficient First Amendment retaliation claim to survive the motion to dismiss, as against the Village of Chittenango, Corey, Horning, Kopp, and Cimpi.

3.   *Fourteenth Amendment Due Process Claim*

Reynolds alleges that defendants violated his Fourteenth Amendment right to due process.  (Compl. ¶¶ 19-22.)  He argues that his procedural due process rights were violated because he was terminated from his employment as a Chittenango police officer without a hearing. (Dkt. No. 10 at 9-14.)  He also argues that his substantive due process rights were violated pursuant to the "stigma plus" theory, based on his allegations that defendants filed false performance reports and that those

reports sullied his good name and reputation.  (Compl. ¶¶ 19-22; Dkt. No. 10 at 14-15.)

a.    *Procedural Due Process*

Analysis of a procedural due process claim is composed of two prongs.  *See Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988).  First, the court must discern "whether the plaintiff has a property or liberty interest protected by the Constitution."  *Id.* (citation omitted).  If such an interest exists, "[the] court must then consider whether the government deprived the plaintiff of that interest without due process."  *Id.*  Thus, under the second step of the analysis, the court must ask "what process was due to the plaintiff, and . . . whether that constitutional minimum was provided in the case under review."  *Id.* (citation omitted).  This involves a weighing of the private interest to be affected, the risk of erroneous deprivation, the value of additional safeguards, and the governmental burden such additional safeguards would impose.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Interboro Inst., Inc. v. Foley*, 985 F.2d 90, 93 (2d Cir. 1993) ("Due process requires notice and the opportunity to be heard." (citation omitted)).

Defendants moved to dismiss Reynolds' procedural due process

claim, arguing that he has not adequately alleged he had a property interest in his employment, his deprivation could have been remedied through grievance procedures, and an Article 78 proceeding constitutes sufficient post-deprivation process.  (Dkt. No. 4, Attach. 1 at 12-14.)  The court disagrees.

First, continued public employment of a full-time civil service employee constitutes a protected property interest.  *See O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) ("[I]t is well established that the state-law property interest of government employees who may only be discharged for cause . . . is a constitutionally protected property interest for purposes of the Fourteenth Amendment."); *Barnes v. Pilgrim Psychiatric Ctr.*, 860 F. Supp. 2d 194, 203 (E.D.N.Y. 2012) ("There is no doubt that government employees covered by laws and/or agreements prohibiting discharge without cause possess a Constitutionally protected property right in continued employment." (citation omitted)); *Sorano v. Taggart*, 642 F. Supp. 2d 45, 56 (S.D.N.Y. 2009) ("Because, as a law enforcement officer, [the plaintiff] could not be terminated without just cause, she had a constitutionally protected property interest in her continued employment.").

Accepting Reynolds' allegations as true, Reynolds' was a full-time

employee of the Village of Chittenango, and his public employment agreement provided that he may only be discharged for cause and with a notice and opportunity to be heard.  (Compl. ¶¶ 6-7, 9-10.)  Thus, he had a protected property interest in his continued employment with the Village of Chittenango.

Next, although an Article 78 proceeding may constitute sufficient post-deprivation process to satisfy procedural due process concerns, such a proceeding would not suffice under these circumstances.  An Article 78 proceeding is only sufficient if "[d]efendants complied with the minimal due process requirements for a pre-termination hearing."  *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 617 (E.D.N.Y. 2011) (citation omitted).  Where, as here, an Article 78 proceeding was available to Reynolds, "the requisite [pre-termination] hearing is a minimal one [that] . . . serves mainly as a check against a mistake being made by ensuring there are reasonable grounds to . . . support his termination."  *Id.* at 612 (citation omitted).

Here, Reynolds' alleges that defendants did not provide him with the pre-termination notice and hearing that was required under law and contract.  Accordingly, the availability of an Article 78 proceeding does not

foreclose his procedural due process claim. And considering the appropriate factors, Reynolds has adequately alleged that defendants' failed to satisfy the requirements of procedural due process with regard to his termination. *See Mullen v. Vill. of Painted Post*, 356 F. Supp. 3d 275, 283 (W.D.N.Y. 2019).

Accordingly, defendants' motion to dismiss Reynolds' procedural due process claim,[5] as against Corey, Horning, Kopp, and Cimpi is denied.[6]

### b. Stigma Plus

Although Reynolds' complaint does not expressly allege a due process claim pursuant to the "stigma plus" doctrine, (Compl. ¶¶ 19-22), he clarified in his opposition brief that he was attempting to plead such a claim. (Dkt. No. 10 at 14-15.)

Defamation is an issue of state, not federal, law "and therefore

_____

[5] Defendants' argument regarding the grievance procedures provided for in Reynolds' employment agreement may have merit, but is not a sufficient basis, at this stage, to dismiss the otherwise properly pleaded claim. *Elliott v. Nestle Waters North America Inc.*, No. 13 Civ. 6331, 2014 WL 1795297, at *8 (S.D.N.Y. May 6, 2014) (adopting a magistrate judge's finding that "because [an agreement relied upon by the defendant] is outside the scope of the complaint, the Court cannot consider [it] in resolving [the defendant's] motion to dismiss").

[6] Reynolds did not set forth any allegations to establish the Village of Chittenango's *Monell* liability for his Fourteenth Amendment due process claim. (Compl. ¶¶ 19-22.) Defendants put Reynolds on notice of this in their motion to dismiss, (Dkt. No. 4, Attach. 1 at 1), to which Reynolds offered no response. Accordingly, defendants' motion to dismiss with respect to Reynolds' due process claim is granted as against the Village of Chittenango, and that claim is dismissed with leave to amend.

provides an insufficient basis to maintain a § 1983 action." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004). Under limited circumstances, however, a plaintiff may seek relief under the so-called "stigma plus" doctrine. *See McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 4 (2d Cir. 2013) (citation omitted). "Specifically, an action can be grounded in 42 U.S.C. § 1983 when that plaintiff can demonstrate a stigmatizing statement plus a deprivation of a tangible interest." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (internal quotation marks and citation omitted).

A successful claim requires the plaintiff to prove: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah*, 383 F.3d at 38 (internal quotation marks and citation omitted). The "'plus' prong under this doctrine" is satisfied by "the deprivation of a plaintiff's property" or some other tangible interest. *Id.* (citation omitted).

As explained below in the defamation sub-section of this Memorandum-Decision and Order, Reynolds' complaint does not allege defamation with any degree of specificity. (*See generally* Compl.) It does

not allege what the actual statements were, by whom they were spoken or published, to whom they were spoken or published, or when they were spoken or published.  (*Id.*)  Accordingly, Reynolds' due process claim to the extent it is predicated on an interest in his "good name and reputation," pursuant to the "stigma plus" theory, is dismissed.

**B.    Reynolds' State Law Claims**

*1.    Breach of Contract*

Reynolds brings a breach of contract claim pursuant to state law against the Village of Chittenango and Corey, based on allegations that his employment contract with the Village of Chittenango "requires good faith and fair dealing, bars the imposition of discipline without 'just ca[u]se[,]' and compels [the Village of Chittenango] to provide due process in the form of . . . notice and a hearing," and he was ultimately terminated without cause or a hearing.  (Compl. ¶¶ 23-27.)

Under New York law, "[t]he elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage."  *Clearmont Prop., LLC v. Eisner*, 58 A.D.3d 1052, 1055 (3d Dep't 2009) (internal quotation marks and citation omitted).

First, by his own admission, Reynolds' employment contract was between he and the Village of Chittenango.  (Compl. ¶ 24.)  Reynolds does not otherwise allege that Corey was acting as the Village of Chittenango when Reynolds entered into the contract with the Village.  (*See generally* Compl.)  Accordingly, Reynolds has failed to adequately plead the first element of a breach of contract claim as to Corey and the claim must be dismissed as against him with leave to amend.

However, the court is persuaded that, at this juncture, Reynolds has set forth sufficient allegations to maintain his breach of contract claim against the Village of Chittenango.  He alleges the existence of an employment contract between he and the Village of Chittenango; that Reynolds' performed his duties as a police officer satisfactorily; that the Village of Chittenango breached its duties by terminating him without cause and without a hearing; and that he suffered financial loss as a result of his termination.  (Compl. ¶¶ 7, 9, 13, 24.)  Defendants' arguments that this claim must be dismissed because Reynolds did not provide the court with the contract with his complaint, and that he was required to follow grievance procedures in an agreement that has not been provided to the court, (Dkt. No. 4, Attach. 1 at 18-19), is unavailing.  *See St. John's*

*University, New York v. Bolton*, 757 F. Supp. 2d 144, 158 n.7 (E.D.N.Y.

2010) ("Plaintiff's allegations of fact are sufficient for the purposes of the

present motions to dismiss, and [p]laintiff is not required to submit the

[a]greements to the court at this early stage of the litigation."); *Elliott v.

Nestle Waters N. Am. Inc.*, No. 13 Civ. 6331, 2014 WL 1795297, at *8

(S.D.N.Y. May 6, 2014).

Accordingly, defendants' motion to dismiss Reynolds' breach of

contract claim as against the Village of Chittenango is denied.

*2. Defamation*

Reynolds brings a defamation claim pursuant to state law against the

Village of Chittenango and Corey.  (Compl. ¶¶ 28-31.)  He alleges that he

"was injured *per se* and suffered special damages."  (Dkt. No. 10 at 16.)

Defendants argue that the court should dismiss Reynolds' claim because

the complaint does not mention any "*actual* statements" or "other

information or facts . . . regarding the alleged defamatory statements," so

his "allegations are entirely speculative and . . . insufficient to sustain a

claim for defamation."  (Dkt. No. 4, Attach. 1 at 17.)[7]

---

[7]  Defendants also argue that Reynolds' claim is untimely.  (Dkt. No. 4, Attach. 1 at 17-
18.)  The statute of limitations for defamation claims against a municipality in New York is one
year and ninety days from the publication of the allegedly defamatory statements.  *See Ripka*

To state a claim for defamation under New York law, a plaintiff must allege "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, . . . caus[ing] special harm or constitut[ing] defamation per se." *Jackie's Enterprises, Inc. v. Belleville*, 165 A.D.3d 1567, 1569-70, (3d Dep't 2018) (citations omitted).

For a defamation claim to survive a motion to dismiss, a plaintiff must "identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published." *Hillary v. Vill. of Potsdam*, No. 7:12-cv-1669, 2015 WL 902930, at *11 (N.D.N.Y. Mar. 3, 2015) (citing citation omitted). In other words, the allegations must include "the time, place, and manner of the false statement." *Arvanitakis v. Lester*, 145 A.D.3d 650, 651 (2d Dep't 2016).

———————————————

*v. County of Madison*, 162 A.D.3d 1371, 1373 (3d Dep't 2018); N.Y. Gen. Mun. Law § 50-i(1)(c). This statute of limitations applies to Corey as well, so long as he was "acting within the scope of [his] employment when [he] made the allegedly defamatory statements." *Id.* (citations omitted). Reynolds' complaint is not entirely clear as to when the statements were made. But for purposes of this Memorandum-Decision and Order, the court assumes the one year and ninety days statute of limitations applies to Reynolds' claim. The court reads Reynolds' complaint, which was filed on February 7, 2019, as alleging that defendants made defamatory statements in January and/or February 2018, (Compl.), rendering his claim timely.

Reynolds' defamation claim fails on the merits.  Reynolds argues that his allegation that "[d]efendants falsely reported that [his] work performance was unsatisfactory" is sufficient to maintain his claim.  (Dkt. No. 10 at 15 (citing Compl. ¶ 29).)  But this allegation is vague and wholly devoid of any support as to the precise nature of the defamatory statements.  Reynolds does not allege what the actual statements were, by whom they were spoken or published, to whom they were spoken or published, or when they were spoken or published.  (Compl.)

Accordingly, defendants' motion to dismiss Reynolds' defamation claim is granted and the claim is dismissed.  *See Ben Hur Moving & Storage, Inc. v. Better Bus. Bureau of Metro. N.Y., Inc.*, No. 08 Civ. 6572, 2008 WL 4702458, at *5 (S.D.N.Y. Oct. 3, 2008) ("[T]he plaintiff does not state with sufficient particularity what [the alleged defamatory] statements were, when they were made, by whom they were made, and to whom they were made.  The defamation claim . . . must, therefore, be dismissed.").

*3.    IIED*

Reynolds brings an IIED claim pursuant to state law against Corey, Horning, and Kopp.  (Compl. ¶¶ 32-35.)  Defendants argue that Reynolds' claim is subject to dismissal because, as they posit, the complaint does not

contain allegations that satisfy the high standard of "extreme and outrageous conduct."  (Dkt. No. 4, Attach. 1 at 20.)  Reynolds asserts that defendants' use of "threats of criminal prosecution to coerce [him] . . . is extreme and caused [him] severe emotional distress."  (Dkt. No. 10 at 18.)  The court agrees with defendants.

Under New York law, IIED has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress." *Chanko v. Am. Broad. Cos., Inc.*, 27 N.Y.3d 46, 56 (2016) (citation omitted).  As to the first element, the "conduct [must have] been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (internal quotation marks and citation omitted).  This standard is "rigorous[] and difficult to satisfy."  *Id.*  Indeed, the New York Court of Appeals has remarked that "of the [IIED] claims considered by th[at] [c]ourt, *every one* has failed because the alleged conduct was not sufficiently outrageous."  *Id.* (quoting *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 122 (1993))*.*

The conduct at issue here for purposes of Reynolds' IIED claim—threatening criminal prosecution in an attempt to coerce Reynolds into waiving his rights under law and contract—although not at all condoned by the court, is simply insufficient to constitute the "extreme and outrageous" conduct required to maintain an IIED claim. *See Corrado v. N.Y. Unified Court Sys.*, 163 F. Supp. 3d 1, 24-25, 27 (E.D.N.Y. 2016) (dismissing an IIED claim where the plaintiff's managers, among other things, "directed [another supervisor] to create a pretextual paper trail of performance issues regarding [her] performance," and "e-mailed [her] *directly* threatening termination if she did not attend counseling sessions"); *Thomas v. N.Y.C Dep't of Educ.*, 938 F. Supp. 2d 334, 344, 359 (E.D.N.Y. 2013) (finding that allegations that the plaintiff was subjected to, among other things, "false accusations, verbal abuse, harassment, loss of employment, . . . threat of bringing or prosecution of false charges used to coerce or force resignation, [and] improper initiation and conduct of disciplinary actions" did not rise to the level of extreme and outrageous); *Slatkin v. Lancer Litho Packaging Corp.*, 33 A.D.3d 421, 422 (1st Dep't 2006) (affirming dismissal of an IIED action because "threatening [the plaintiff's] arrest and criminal prosecution [and] instigation of the . . .

plaintiff's arrest by means of false statements . . . is not so outrageous as to be utterly intolerable").

Accordingly, defendants' motion to dismiss Reynolds' IIED claim is granted and that claim is dismissed.

### 4.    Tortious Interference

Reynolds brings a claim of tortious interference of contract against Corey, Horning, and Kopp based on the allegation that they "intentionally interfered with [his] employment with . . . [the Village of] Chittenango and prospective employers," and "[a]s a result, [he] sustained damages."[8] (Compl. ¶¶ 36-38.)

Under New York law, in order for Reynolds to sustain a claim for tortious interference of contract, he (1) "must show the existence of [a] valid contract with a third party," (2) "defendant[]s['] knowledge of that contract," (3) "defendant[]s['] intentional and improper procuring of a breach," and (4) damages. *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007); *see Kirch v. Liberty Media Corp.*, 449

---

[8] Notably, as mentioned above, *see supra* note 3, Reynolds' complaint is unclear as to which theory of tortious interference he intends to invoke here. (Compl. ¶¶ 36-38.) Further, Reynolds' complaint brings this action against "all defendants." (*Id.*) However, in his opposition brief, Reynolds clarifies that the claim is one for tortious interference of contract and that the claim is only sought against Corey, Horning, and Kopp. (Dkt. No. 10 at 18.)

F.3d 388, 401 (2d Cir. 2006) (noting an additional element of "actual breach of the contract").

As is a common theme in Reynolds' complaint, the allegations as to his tortious interference claim are vague and largely conclusory. Indeed, Reynolds needed his opposition brief to clarify the theory under which the claim is brought, and against whom it is brought. (Dkt. No. 10 at 18.) However, at this early stage, Reynolds has alleged enough facts to state a tortious interference of contract claim.

Plainly, Reynolds' complaint establishes the four elements of tortious interference of contract noted above. He has alleged the existence of an employment contract between Reynolds and the Village of Chittenango; that Corey, Horning, and Kopp were aware of the contract; and that he suffered pecuniary damages as a result of being terminated from his job. (Compl. ¶¶ 7, 10, 13, 24.) Additionally, reading the complaint liberally, he alleges that Corey, Horning, and Kopp intentionally procured the alleged breach of contract by making false performance evaluations.[9] (*Id.* ¶¶ 11,

---

[9] Notably, for the parties' future reference, if Reynolds' claim of tortious interference of contract is based on a breach of the collective bargaining agreement, it may be subject to dismissal. *See Spiegel v. Bekowies*, 669 F. App'x 38, 39 (2d Cir. 2016) ("[T]he [federal labor law] preempts a claim for tortious interference with a collective-bargaining agreement (citation omitted)).

29.)  Finally, the alleged actions of Corey, Horning, and Kopp constitute fraud and misrepresentations, and are thus outside the scope of employment.  *See Albert v. Loksen*, 239 F.3d 256, 275 (2d Cir. 2001) ("[A] plaintiff may maintain an action for tortious interference against a co-employee [only] by showing that the co-employee acted outside the scope of his or her authority." (internal quotation marks, alterations, and citation omitted)); *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 425 (E.D.N.Y. 2010) ("A supervisor is considered to have acted outside the scope of his employment if there is evidence that the supervisor's manner of interference involved independent tortious acts such as fraud or misrepresentations, or that he acted purely from malice or self interest." (citation omitted)).

Accordingly, defendants' motion to dismiss Reynold's tortious interference of contract claim is denied.

### 5.    *Prima Facie Tort*

Finally, Reynolds brings a claim for prima facie tort against all defendants, based on allegations that "[d]efendants intended to inflict harm upon [his] pecuniary interests," that they "had no justification or excuse to act in such manner," and that their actions caused him to suffer damages,

including "lost wages, benefits, [and] retirement contributions."  (Compl. ¶¶ 39-42.)

In order to state a claim for prima facie tort in New York, a plaintiff must allege: "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful."  *Posner v, Lewis*, 18 N.Y.3d 566, 570 n.1 (2012) (citation omitted).  This is a "highly disfavored cause of action in New York."  *Katz v. Travelers*, 241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017) (citations omitted).

The Second Circuit has held that the "touchstone" of a prima facie tort claim is "disinterested malevolence," meaning that "the defendant's conduct was not only harmful, but done with the sole intent to harm."  *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990).  Indeed, "[w]here the plaintiff merely pleads intentional and malicious action, but not that the defendant's sole motivation was disinterested malevolence, the [claim] will be dismissed."  *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 465-66 (E.D.N.Y. 2002) (internal quotation marks and citations omitted); *see Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 277 (E.D.N.Y. 2009).

Further, "a critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages. Such damages must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." *Epifani v. Johnson*, 65 A.D.3d 224, 233 (2d Dept. 2009) (alteration and citation omitted).

Here, Reynolds' complaint only alleges that "[d]efendants intended to inflict harm upon the pecuniary interests of [Reynolds]," they "had no justification or excuse to act in such manner," and their actions caused him to suffer damages—a near verbatim recitation of the elements to prime facie tort. (Compl. ¶¶ 39-42.) Reynolds "has not otherwise offered facts demonstrating that defendants' sole intent was to harm him." *See Richardson v. N.Y. State Office of Mental Health*, No. 6:11-cv-1007, 2014 WL 3818928, at *10 (N.D.N.Y. Aug. 4, 2014). Nor has he alleged special damages with any particularity. (Compl. ¶¶ 39-42.) Moreover, the crux of Reynolds' complaint—and presumably his prima facie tort claim—is that defendants retaliated against him based on certain complaints related to Reynolds' defective patrol vehicle, (*see generally* Compl.), which does not constitute the "otherwise lawful conduct" required to maintain this claim.

*See Evans v. Excellus Health Plan, Inc.*, No. 6:11-CV-1248, 2012 WL 3229292, at *7 n.13 (N.D.N.Y. Aug. 6, 2012); *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 372 (W.D.N.Y. 2010). Accordingly, Reynolds' prima facie tort claim must be dismissed.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk amend the docket to reflect the proper names, as set forth in the complaint, for the following defendants: Mickey Kopp, Cassandra Cimpi, and John Does; and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 4) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** as to Reynolds' (1) Fourteenth Amendment due process claim to the extent it is based on an interest in his "good name and reputation" pursuant to the "stigma plus" doctrine; (2) defamation claim; (3) IIED claim; and (4) prima facie tort claim, which claims are **DISMISSED**; and

> **GRANTED** as to Reynolds' (1) First Amendment retaliation claim as against Baldwin, Bough-Martin, Keville, Millet, and Doe defendants; (2) Fourteenth Amendment procedural due

process claim, to the extent it is based on Reynolds' interest in continued employment with the Village of Chittenango, as against the Village of Chittenango, Baldwin, Bough-Martin, Keville, Millet, and Doe defendants; and (3) breach of contract claim as against Corey, which claims are **DISMISSED WITHOUT PREJUDICE**; and

**DENIED** in all other respects; and it is further

**ORDERED** that the following claims remain against the Village of Chittenango: (1) a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 and (2) a breach of contract claim pursuant to New York state law; and it is further

**ORDERED** that the following claims remain against Corey, Horning, and Kopp: (1) a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983; (2) a Fourteenth Amendment procedural due process claim pursuant to 42 U.S.C. § 1983, to the extent it is based on Reynolds' interest in continued employment with the Village of Chittenango; and (3) a tortious interference of contract claim pursuant to New York state law; and it is further

**ORDERED** that the following claims remain against Cimpi: (1) a First

Amendment retaliation claim pursuant to 42 U.S.C. § 1983 and (2) a

Fourteenth Amendment procedural due process claim pursuant to 42

U.S.C. § 1983, to the extent it is based on Reynolds' interest in continued

employment with the Village of Chittenango; and it is further

**ORDERED** that the Clerk shall terminate Baldwin, Bough-Martin,

Millet, Keville, and Doe defendants as defendants; and it is further

**ORDERED** that defendants shall respond to the complaint within the

time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Thérèse

Wiley Dancks to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

March 20, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge